*Wright, J.,
delivered the opinion of the court:
The denial by the defendant that he had any knowledge of the complainant’s embarrassments, of the use of undue means to induce the loan or its continuance, and of all fraud in the transaction set out in the bill, presents this case to us upon its intrinsic merits, as shown in the nature of the transaction, unaccompanied by the ordinary tests of jurisdiction. But if resort were had to the evidence filed to do away the answer, the result would be the .same.
The case presented is one between an avaricious money-lender and an improvident borrower, and exhibits, on the part of the lender, an appetite for gain too insatiable and greedy to rest satisfied with ordinary acquisitions. It is pressed upon our consideration as one showing a ruinous and unconscionable bargain between the parties; one that the complainant should be relieved against, as fraudulent per se, because the inadequacy of -compensation for the money loaned is so gross as to shock every correct mind. The ruinous tendency of borrowing considerable .sums where such rate of interest is exacted and paid for any length of time, is sufficiently apparent to any one. The hundred .dollars loaned, in this case, is increased in less than two years and a half to two hundred and fifty-nine dollars and sixty-two cents — one hundred and sixty per cent. — an amount so repugnant to our sense of propriety, as to induce a strong inclination to relieve against its payment; but we must take care that our feelings do not lead us to overleap the rules which govern courts in -such cases.
*53 Until the year 1824, we had a statute fixing the rate of interest at six per cent, per annum, and providing punishment for usury. This law was held to make void so much of contracts as-stipulated for more than the legal rate of interest; and under it our courts were in the practice of enjoining from collecting the excess, where the debtor tendered the amount of principal and lawful interest due. But the tender of the sum admitted to be due, and the bringing it into court for the use of creditors, was commonly held an indispensable requisite to the chancellor’s interference. The-maxim, “ he that seeks equity, must first do equity,” was deemed applicable to that class of cases. The bill before us contains no-such offer, and the complainant does not in any way bring himself within the strict rule. He avers only that he is willing to pay the balance as the court *may direct, and leaves his case [51 embarrassed with difficulty, on account of his departure from correct practice.
The general assembly, in 1824, repealed the law against usury,, and enacted in its stead the present law, fixing the rate of interest upon all moneys, after the same shall become due, at the rate of six per cent, per annum, and no more. 29 Ohio L. 151. It is contended, for the complainant, that the only change effected in the interest law by this last act, is one of phraseology, the substantial enactment of both being the same. We do not think so. The two acts differ in very essential particulars. In the former, any person demanding or receiving “ more than six per cent, per annum, on any contract, debt, or demand whatever,” forfeited “ the whole amount of the debt on which such illegal interest was chai’ged or received,” one-half to the county, and the other to the pe rson prosecuting. See act of December 29, 1804; 1 Chase’s Stat. 484. The act of 1824 contains no provision forfeiting the debt, nor any one prohibiting the contracting for, or ■ the receiving, any rate of interest. The first was entitled “an act fixing the rate of interest, and for preventing usurythe last simply-“an act fixing the rate of interest." These differences clearly indicate that the assembly, in the two enactments, had not the same-object in view. The change of the law presents this class of cases before a chancellor in a new light.
The 'distinguished counsel for the complainant, feeling the difficulty and novelty of this case, urge their claims to relief upon the ground that the contract is hard and unconscionable; and claim- *54 that, being open, it may be relieved against or rescinded. We feel the truth of the assertion, that these contracts are hard and ■unconscionable; and if our aid was sought to enforce their performance, we should not hesitate to refuse it. Yet, as no portion of these contracts is against law, the usual way of restraining against the illegal part of the contract, upon the party bound coming forward and paying what is legally dije, is not open to ns. To declare a contract for more than six per cent, per annum interest void, would be to go beyond the legislative provisions on the subject; and to impose a penalty upon such contracts would set up again that which the legislature has taken away. Such .a course would draw to chancery, from the legislature, to whom the subject peculiarly belongs, the power of fixing the rate of interest and defining and punishing usury. Whatever gratification, •52] therefore, as individuals, we might feel *to be able to relieve against such enormous interest, we do not find the authority, as .a court, to do so on either of the grounds pressed in argument.
The case is susceptible of one other view, the result of which may be more to the complainant’s advantage. It comes within one of the ordinary heads of chancery jurisdiction to relieve against penalties affixed to legal contracts, which the rules of proceeding in courts of law enable parties to exact. Accustomed as chancery is to exonerate parties from penalties and forfeitures, we shall pursue an open track, if the case in hearing afford opportunity to apply such relief. The transactions between these parties disclose the fact, that in the first note for one hundred and thirty dollars, there was an agreement that one hundred and ten dollars, paid before the stipulated time expired, should discharge it. We .are disposed to regard this as a penalty, inserted in the contract, in order to compel its punctual performance, and to relieve against it upon the same principles parties are ordinarily relieved from penalties. All the changes made in this contract since it was first entered into, we understand retain the same feature, although the case does not disclose the exact amount of penalty in any of the obligations except the first one. In taking measures to exonerate the complainant from these penalties, we contravene no provision of our interest law. It is due to the subject to say we should have been better satisfied if the complainant had proffered payment of the money due, and if refused, had brought it into court; but the case admitted by the demurrer is so strongly marked, and the ex- *55 .actions for the use of the money so scandalous, that we are induced, ■without intending to establish a precedent, to overlook the omis:sion; and we the more readily do this, because the defendant has gone to a hearing of his case without raising any objection on •this account. See 3 Munf. 397.
The case will be referred to a master, with instructions to proceed on short notice to take an account showing what proportion of the three last notes mentioned in the bill is for penalties, and how much is still due the defendant, allowing the stipulated rate of interest on the sum borrowed, and deducting the payments as ■of the date when made. The complainant is required to pay the .amount so found to the master for the use of the defendant, within thirty days after the account is completed; and also to pay the •costs accrued in the suits at law; but if he fail in these payments, the injunction heretofore allowed will, from the ^expiration [53 of said thirty days, stand dissolved. Eor the coming of the report •of the master and further proceedings, the cause is continued.